**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| LEOPOLD ZEITZ and ANNEMIE ZEITZ, | : | |
| | : | |
| PlaintiffS, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 2:15-CV-00218-RWS |
| | : | |
| INNSBRUCK GOLF RESORT, INC., | : | |
| | : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on Plaintiffs' Motion for Spoliation

Sanctions ("Motion for Sanctions") [35]. After a review of the record, the

Court enters the following Order.

### Background

This case arises out of an incident at Defendant Innsbruck Golf Resort,

Inc.'s ("Defendant") golf course in which Plaintiff Leopold Zeitz ("Leopold")

was injured. On October 28, 2015, Leopold and Plaintiff Annemie Zeitz

("Annemie") filed suit, claiming Defendant's negligence caused Leopold's

injuries and Annemie's loss of consortium. (Complaint, Dkt. [1].)

On October 11, 2014, Leopold went to Defendant's course to play golf.

(Complaint, Dkt. [1] ¶ 6.)  While driving a golf cart from the second to the third hole, the golf cart slid and flipped.  (Id.)  Leopold suffered substantial injuries as a result and had to undergo surgery.  (Id. at ¶ 11.)  He claims that the incident was a result of the path and golf cart being in poor condition, which Defendant failed to warn him about.  (Id at ¶¶ 8, 9, 9.)[1]

In their Motion for Spoliation Sanctions [35], Plaintiffs claim that Defendant's employees spoliated in bad faith both the golf cart Leopold was riding and the signage present along the path at the time of the incident, which will severely prejudice it unless appropriate sanctions are imposed.  (Pls.'s Br. in Supp. of Mot. for Spoliation Sanctions ("Pls.'s Br."), Dkt. [35-1].)  On October 13, 2014, Jacob Allison, the course's golf director, drove the golf cart to check for mechanical issues and drafted an incident report.  (Id. at 3–4.)  The general manager, Mr. McCall, reviewed the report and sent it to Defendant's insurance provider.  (Id. at 4.)

That same day, Allison received a phone call from Cynthia Lyles, a friend of Plaintiffs, during which he informed her that the golf cart at issue

---

[1]  In the Complaint [1], the number 9 is used to mark three separate paragraphs. This citations references the first and third such paragraphs.

2

would be gone after 7 p.m. that evening.  (Id. at 6.)  Defendant explains in its Response that the entire fleet of golf carts was leased to it by Club Car.  (Def.'s Resp. in Op. to Pls.'s Mot. for Spoliation Sanctions ("Response"), Dkt. [36] at 4.)  Weeks prior to the incident, Defendant scheduled for Club Car to pick up the fleet on October 13, 2014, and replace it with a new fleet of electric carts. (Id at 5.)

Plaintiff also claims that after the incident, Defendant threw away the signs directing golfers to avoid the path where the incident occurred.  (Pls.'s Br., Dkt. [35-1] at 5.)  These signs were replaced approximately every month, and the ones present at the time of the incident were not preserved.  (Id at 5–6.) While Defendant agrees that the signs are replaced monthly since they are made of laminated paper, it also points out that an off-duty deputy sheriff who responded to the scene of the incident took photographs of the area, including the signs as they existed at that time.  (Response, Dkt. [36] at 5, 10.)

After reviewing the record, the Court enters the following Order.

## Discussion

### I.    Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the

3

failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation." <u>Graff v. Baja Marine Corp.</u>, 310 F. App'x

298, 301 (11th Cir. 2009) (internal quotation marks and citation omitted).

"[F]ederal law governs the imposition of sanctions for failure to preserve

evidence in a diversity suit." <u>Flury v. Daimler Chrysler Corp.</u>, 427 F.3d 939,

944 (11th Cir. 2005).  Although federal law governs, the spoliation analysis

nonetheless should be "informed by Georgia law," which the Eleventh Circuit

has found to be "wholly consistent with federal spoliation principles."  <u>Id.</u>

In determining whether spoliation sanctions are warranted, the Eleventh

Circuit has instructed courts to consider the following factors:

> (1) whether the [plaintiff] was prejudiced as a result of the
> destruction of the evidence; (2) whether the prejudice could
> be cured; (3) the practical importance of the evidence; (4) whether
> the [defendant] acted in good or bad faith; and (5) the potential for
> abuse if expert testimony about the evidence [is] not excluded.

<u>Id.</u> at 945 (citing <u>Bridgestone/Firestone N. Am. Tire, LLC v. Campbell</u>, 574

S.E.2d 923, 926 (Ga. Ct. App. 2002)).  A consideration of these factors may

lead the court to impose any of the following sanctions: "(1) dismissal of the

case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of

evidence which raises a presumption against the spoliator."  <u>Id.</u>  When

AO 72A
(Rev.8/82)

considering what sanction to impose, courts should bear in mind that "sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Id. at 944.

While these factors are to be considered in determining whether to impose sanctions, "a finding of bad faith is a prerequisite to spoliation sanctions." In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1313 (N.D. Ga. 2011).[2] To find bad faith, the court is not required to find malice. Flury, 427 F.3d at 946. It must, however, find more than mere negligence, "which is insufficient to support spoliation sanctions under the law of this circuit." In re Delta/AirTran, 770 F. Supp. 2d at 1313. Utilizing this

---

[2] In Bashir v. Amtrak, the Eleventh Circuit held "[i]n this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. Mere negligence in losing or destroying the records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case." 119 F.3d 929, 931 (11th Cir. 1997) (internal quotations and citations omitted). While a reading of Flury in isolation suggests that bad faith is now only one of several factors to consider, "under the prior precedent rule, the Eleventh Circuit's decision in Bashir remains controlling on this issue." In re Delta/AirTran, 770 F. Supp. 2d at 1314. Additionally, while Bashir was a decision informed by Florida law and Flury was a decision informed by Georgia law, subsequent Eleventh Circuit decisions have reiterated that a finding of bad faith is necessary for the imposition of spoliation sanctions without mentioning this distinction. See, e.g., Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1310 (11th Cir. 2009); Cox v. Target Corp., 351 F. App'x 381, 383–84 (11th Cir. 2009); Slattery v. Precision Response Corp., 167 F. App'x 139, 141 (11th Cir. 2006).

framework, the Court will consider the alleged spoliation of the golf cart and course signage in turn.

## II.    Discussion

As an initial matter, Defendant argues that the evidence at issue was not in fact spoliated because there was no pending litigation, nor was litigation reasonably foreseeable.  (Response, Dkt. [36] at 8–9.)  "[I]n order for the injured party to pursue a remedy for spoliation, the spoliating party must have been under a duty to preserve the evidence at issue."  Phillips v. Harmon, 774 S.E.2d 596, 603 (Ga. 2015).  This duty arises when litigation is reasonably foreseeable to the party in control of the evidence from his own perspective. Id. at 604.  For the defendant, "the duty arises when it knows or reasonably should know that the injured party, the plaintiff, is in fact contemplating litigation, which the cases often refer to in terms of 'notice' to the defendant." Id.  Such notice of litigation may be actual or express, or it may be constructive.  Id. at 605.  Constructive notice may be based on a variety of circumstances, including "the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties,

6

including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances." Id.  The Court may also consider "not only what the plaintiff did or did not do after the injury and before the evidence in question was lost or destroyed, but also what the defendant did or did not do in response to the injury, including the initiation and extent of any internal investigation, the reasons for any notification of counsel and insurers, and any expression by the defendant that it was acting in anticipation of litigation." Id.  However, the mere fact that an injury occurred and the defendant investigated the incident does not trigger this duty.  Id at 605 n.9.

While Defendant's employees did investigate after the incident, it claims that it was simply complying with its common practice of compiling an incident report to file with its insurer.  (Pls.'s Br., Dkt. [35-1] at 4 (quoting McCall Depo. At 24:18–20)).  Additionally Lyles, who was acting in a representative capacity for Plaintiffs, told McCall on October 16, 2014, "Sir, we have no intention of suing you."  (Response, Dkt. [36] at 8.)  Even if Defendant could be said to have had constructive knowledge that litigation was reasonably foreseeable at the time of the incident or investigation, Lyles's statement goes far in negating any such constructive knowledge.  The Court,

however, need not decide whether such a duty to preserve evidence arose

because the undersigned finds that sanctions are not appropriate under the

circumstances presented in this case.

Assuming, without deciding, that a duty to preserve evidence arose and

spoliation therefore occurred, the Court will now address why sanctions would

not be appropriate due to the absence of the golf cart or the course signage.

A.    The Golf Cart

Sanctions are not appropriate for the absence of the golf cart.  Defendant

did not own the instant golf cart or any of the others used at its course, instead

leasing them from Club Car.  (Response, Dkt. [36] at 4.)  Prior to the incident,

Defendant arranged for Club Car to pick up the entire fleet of golf carts on

October 13, 2014, to be replaced with new and updated carts.  (Id. at 5.)  It was

therefore coincidence that the golf cart's removal occurred two days after the

incident.  Nothing suggests that Defendant acted in bad faith in abiding by their

prior arrangement with Club Car.  That Plaintiffs were accurately informed by

Allison, through his phone call with Lyles, that the golf cart would no longer

be available after 7 p.m. on October 13, 2014, due to this conversion,  (Pls.'s

Br., Dkt. [35-1] at 6), supports a conclusion that Defendant was not acting in

AO 72A
(Rev.8/82)

bad faith in allowing the golf cart's removal.  Nor does the fact that Defendant

inspected and tested the golf cart prior to its removal suggest that Defendant

acted in bad faith.  See Phillips, 774 S.E.2d at 605 n.9 ("[T]here may be many

reasons to investigate incidents causing injuries, from simple curiosity to

quality assurance to preparation for possible litigation.").  Plaintiffs have failed

to provide sufficient evidence to indicate that the golf cart's absence is due to

bad faith by Defendant.

Based on the foregoing, the Court concludes that sanctions are not

appropriate for the spoliation of the golf cart.

B.      The Course Signage

Sanctions are not appropriate for the absence of the signs marking the

path where the incident occurred.  The record shows that Defendant regularly

replaced these signs, approximately every month, since they were made of

laminated paper.  (Response, Dkt. [36] at 10.)  Plaintiffs have offered no

evidence to suggest that Defendant's replacing and disposing of these signs

was done in bad faith, and Defendant's explanation for its actions supports the

conclusion that its actions were not taken in bad faith.  Additionally,

photographs of the scene, including the signs present, were taken immediately

9

after the incident by Deputy Maddox, an off-duty officer who responded to help Leopold.  (Id. at 5.)  Any prejudice Plaintiffs may suffer from the absence of the signs can therefore be cured by use of the photograph and by the questioning of Deputy Maddox.

Based on the foregoing, the Court concludes that sanctions are not appropriate for the spoliation of the course signage.

### Conclusion

In accordance with the foregoing, Plaintiff's Motion for Spoliation Sanctions [35] is **DENIED**.

**SO ORDERED**, this 24th day of October, 2016.

_____

**RICHARD W. STORY**
United States District Judge

10